UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

JACOB LARSON,

    *Plaintiff,*

    *v.*

Case No. 3:25-cv-797

ONEIDA COUNTY, CITY OF RHINELANDER,
MITCHELL ELLIS, JOSEPH HALLIHAN,
CHRISTOPHER CONIGLIO, THOMAS WILLIAMS,
MATTHEW RUDOLPH, ANDREW BERG,
LUKE DRUMMOND, KURT HELKE,
& RYAN LARSEN,

    *Defendants.*

---

## COMPLAINT

---

Plaintiff Jacob Larson, by his attorneys, Strang Bradley, LLC, for his complaint against Defendants, states:

### INTRODUCTION

1.    On February 13, 2025, Oneida County Sheriff's deputies received a tip that Plaintiff Larson had driven while smelling of intoxicants.

2.    When the deputies located Larson, they did not smell intoxicants. They had no other evidence that Larson had driven under the influence.

3.    Nevertheless, the deputies detained Plaintiff Larson, frisked him, and forced him to perform field sobriety tests.

4.    All of this was done without reasonable suspicion that Plaintiff Larson had committed a crime or was armed or dangerous.

5.      Just a week later, on February 20, 2025, Oneida County Sheriff's deputies again unlawfully seized, frisked, searched, and (de facto) arrested Plaintiff Larson without reasonable suspicion, much less probable cause.

6.      This time, Oneida County Sheriff's deputies unlawfully seized Plaintiff Larson to interrogate him about the location of his brother, Jordan.

7.      During this unlawful seizure, officers with the Rhinelander Police Department arrived on scene.

8.      Despite learning that Larson was not suspected of a crime, the police officers allowed Plaintiff Larson to remain handcuffed.

9.      Plaintiff Larson was handcuffed and interrogated for nearly 30 minutes after they demonstrably knew they had the wrong person.

10.      Plaintiff Larson received no charges, tickets, or warnings stemming from either of these unlawful searches and seizures because he never did anything wrong.

## JURISDICTION AND VENUE

11.      This Court has jurisdiction over federal questions under 28 U.S.C. § 1331.

12.      Venue is proper under 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claims asserted herein occurred within this judicial district.

## PARTIES

13.      Plaintiff Jacob Larson is an adult resident of Oneida County, Wisconsin.

14.      Defendant Oneida County is a political subdivision of the state of Wisconsin and is, or was, the employer of Defendants Ellis, Hallihan, Coniglio, Williams,

2

Rudolph, Berg, and Drummond, and is required to pay any tort judgment for damages for which its employees are liable for acts within the scope of their employment.

15.     Defendant City of Rhinelander is a political subdivision of the state of Wisconsin and is, or was, the employer of Defendants Helke and Larsen and is required to pay any tort judgment for damages for which its employees are liable for acts within the scope of their employment.

16.     Defendant Mitchell Ellis was, at the time of this occurrence, employed as a sheriff's deputy with the Oneida County Sheriff's Department.

17.     At all times relevant to this action, Defendant Ellis engaged in the conduct complained of while he was a sheriff's deputy and was acting under color of state law.

18.     At all times relevant to this action, Defendant Ellis was acting within the scope of his employment with the Oneida County Sheriff's Department.

19.     Defendant Ellis is sued in his individual capacity.

20.     Defendant Joseph Hallihan was, at the time of this occurrence, employed as a sheriff's deputy with the Oneida County Sheriff's Department.

21.     At all times relevant to this action, Defendant Hallihan engaged in the conduct complained of while he was a sheriff's deputy and was acting under color of state law.

22.     At all times relevant to this action, Defendant Hallihan was acting within the scope of his employment with the Oneida County Sheriff's Department.

23.     Defendant Hallihan is sued in his individual capacity.

24.     Defendant Christopher Coniglio was, at the time of this occurrence, employed as a sheriff's deputy with the Oneida County Sheriff's Department.

25.     At all times relevant to this action, Defendant Coniglio engaged in the conduct complained of while he was a sheriff's deputy and was acting under color of state law.

26.     At all times relevant to this action, Defendant Coniglio was acting within the scope of his employment with the Oneida County Sheriff's Department.

27.     Defendant Coniglio is sued in his individual capacity.

28.     Defendant Thomas Williams was, at the time of this occurrence, employed as a sheriff's deputy with the Oneida County Sheriff's Department.

29.     At all times relevant to this action, Defendant Williams engaged in the conduct complained of while he was a sheriff's deputy and was acting under color of state law.

30.     At all times relevant to this action, Defendant Williams was acting within the scope of his employment with the Oneida County Sheriff's Department.

31.     Defendant Williams is sued in his individual capacity.

32.     Defendant Matthew Rudolph was, at the time of this occurrence, employed as a sheriff's deputy with the Oneida County Sheriff's Department.

33.     At all times relevant to this action, Defendant Rudolph engaged in the conduct complained of while he was a sheriff's deputy and was acting under color of state law.

34.    At all times relevant to this action, Defendant Rudolph was acting within the scope of his employment with the Oneida County Sheriff's Department.

35.    Defendant Rudolph is sued in his individual capacity.

36.    Defendant Andrew Berg was, at the time of this occurrence, employed as a sheriff's deputy with the Oneida County Sheriff's Department.

37.    At all times relevant to this action, Defendant Berg engaged in the conduct complained of while he was a sheriff's deputy and was acting under color of state law.

38.    At all times relevant to this action, Defendant Berg was acting within the scope of his employment with the Oneida County Sheriff's Department.

39.    Defendant Berg is sued in his individual capacity.

40.    Defendant Luke Drummond was, at the time of this occurrence, employed as a sheriff's deputy with the Oneida County Sheriff's Department.

41.    At all times relevant to this action, Defendant Drummond engaged in the conduct complained of while he was a sheriff's deputy and was acting under color of state law.

42.    At all times relevant to this action, Defendant Drummond was acting within the scope of his employment with the Oneida County Sheriff's Department.

43.    Defendant Drummond is sued in his individual capacity.

44.    Defendant Kurt Helke was, at the time of this occurrence, employed as a police sergeant with the Rhinelander Police Department.

45.     At all times relevant to this action, Defendant Helke engaged in the conduct complained of while he was a police sergeant and was acting under color of state law.

46.     At all times relevant to this action, Defendant Helke was acting within the scope of his employment with the Rhinelander Police Department.

47.     Defendant Helke is sued in his individual capacity.

48.     Defendant Ryan Larsen was, at the time of this occurrence, employed as a police officer with the Rhinelander Police Department.

49.     At all times relevant to this action, Defendant Larsen engaged in the conduct complained of while he was a police officer and was acting under color of state law.

50.     At all times relevant to this action, Defendant Larsen was acting within the scope of his employment with the Rhinelander Police Department.

51.     Defendant Larsen is sued in his individual capacity.

## FACTS

### I.    February 13, 2025, Incident

52.     On February 13, 2025, Plaintiff Larson picked up his child to take them to a dentist appointment at First Impressions in Rhinelander.

53.     Emergency dispatch received a false report that Larson had smelled of intoxicants when he picked up the child.

54.     Defendants Ellis and Hallihan were dispatched to First Impressions to investigate this allegation.

55.     When Ellis and Hallihan arrived, they entered the dentist's office and told Larson to step outside with them.

56.     Ellis and Hallihan did not smell an odor of intoxicants on Plaintiff Larson.

57.     Ellis and Hallihan had not observed Plaintiff Larson drive.

58.     Ellis and Hallihan did not observe any other evidence suggesting that Plaintiff Larson was intoxicated or under the influence of an illicit substance.

59.     Based on their observations of Plaintiff Larson, Ellis and Hallihan lacked reasonable suspicion to believe that he had committed a traffic offense.

60.     Nevertheless, once outside, Ellis and Hallihan ordered Plaintiff Larson to walk over to their squad car.

61.     Plaintiff Larson complied with this order.

62.     Neither Ellis nor Hallihan had reason to believe that Plaintiff Larson was armed and dangerous.

63.     But Hallihan told Plaintiff Larson to turn around and explained that he was going to pat him down.

64.     Hallihan proceeded to frisk Plaintiff Larson and place his hands in Larson's coat pockets.

65.     Plaintiff Larson did not consent to this search.

66.     Ellis watched as Hallihan searched Plaintiff Larson's person but failed to intervene.

67.     Hallihan did not find any contraband on Plaintiff Larson's person.

68.     Hallihan and Ellis did not observe any indications that Plaintiff Larson was impaired during this time.

69.     Although Hallihan and Ellis continued to lack reasonable suspicion that Plaintiff Larson had driven while impaired, they extended the stop by ordering Larson to perform field sobriety tests.

70.     Hallihan conducted the horizontal gaze nystagmus test on Plaintiff Larson.

71.     After Plaintiff Larson did not display any signs of impairment, Hallihan informed Larson that he did not believe he was impaired.

72.     Hallihan explained that, because Plaintiff Larson did not appear intoxicated, he was not going to require Larson to complete the remaining field sobriety tests.

73.     Hallihan apologized to Plaintiff Larson and told him he was free to leave.

74.     Hallihan and Ellis did not issue any traffic citations or warnings to Plaintiff Larson.

II.     **February 20, 2025, Incident**

75.     On February 20, 2025, Plaintiff Jacob Larson's brother, Jordan Larson, allegedly became involved in a domestic dispute with his girlfriend.

76.     While speaking with 911 dispatch, Jordan's girlfriend indicated that, following the dispute, she had seen Plaintiff Larson's vehicle pull up to the house; however, she stated she did not know if Jordan had left with him.

77.     Jordan's girlfriend never indicated that Plaintiff Jacob Larson had been involved in the domestic dispute.

78.     Jordan's girlfriend provided dispatch with Plaintiff Larson's vehicle information.

79.     At approximately 2:26 P.M. that afternoon, Defendants Oneida County Sheriff's Deputies Coniglio, Williams, Rudolph, Berg, and Drummond observed Plaintiff Larson's vehicle at the Rhinelander BP.

80.     The deputies[1] knew what Jordan Larson looked like based on prior interactions.

81.     The deputies observed only one male, later identified as Plaintiff Larson, pumping gas into the vehicle.

82.     They knew this was not Jordan Larson.

83.     Upon arriving at the scene, one of the deputies yelled out, "Jacob!" referring to Jacob Larson.

84.     One of the deputies approached Plaintiff Larson and ordered him to step towards them.

85.     After this order, Plaintiff Larson was not free to leave.

86.     The deputies then placed Plaintiff Larson in handcuffs or watched and failed to intervene.

87.     At the time the deputies placed Plaintiff Larson in handcuffs, they lacked reasonable suspicion that Plaintiff Larson had committed, was committing, or would commit a crime.

---

[1] Plaintiff knows the names of the deputies who responded to the BP through written reports and has store surveillance footage but does not yet know which deputy is which.

88.     The other deputies were also aware that there was not reasonable suspicion that Plaintiff Larson had committed, was committing, or would commit a crime; however, they failed to intervene when Larson was placed in handcuffs.

89.     After they placed Plaintiff Larson in handcuffs, one deputy reached into Larson's back pants pocket and pulled out his wallet.

90.     Plaintiff Larson did not consent to this search of his person.

91.     The Oneida deputies did not have a warrant to search Plaintiff Larson's person, and they lacked any lawful exception to the warrant requirement.

92.     The deputy then opened Plaintiff Larson's wallet and located his driver's license.

93.     The driver's license indicated the man in handcuffs was Plaintiff Jacob Larson, not his brother Jordan Larson.

94.     At this point, the Oneida deputies had additional evidence that the man was not Jordan Larson.

95.     A deputy then told the remaining deputies that they had detained Jacob Larson, not Jordan Larson.

96.     The deputies, however, still did not release Plaintiff.

97.     Instead, one of them frisked Plaintiff, while the others failed to intervene.

98.     Besides a lack of reasonable suspicion that Plaintiff had committed a crime, there was also no reason to believe he was armed and dangerous.

99.     The frisk yielded no contraband.

100.    Still, the Oneida deputies failed to release Plaintiff.

101.    A few moments later, Defendants Rhinelander Police Department Officers Helke and Larsen arrived at the Rhinelander BP Station.

102.    Helke and Larsen learned from the deputies on scene that the man they were seizing was Jacob Larson.

103.    The Oneida deputies and the Rhinelander Police Defendants proceeded to question Plaintiff Larson about his brother's whereabouts.

104.    Plaintiff Larson was not free to leave during this time; he was still handcuffed.

105.    The Defendants handcuffed and questioned Plaintiff Larson for approximately 30 minutes after they knew he was not Jordan.

106.    The Oneida deputies and the Rhinelander Police Defendants finally allowed Plaintiff Larson to leave.

107.    Plaintiff Larson was never charged in relation to this incident because he never did anything wrong.

**COUNT I:**
**February 13, 2025**
**42 U.S.C. § 1983 Claim for Illegal Search / Failure to Intervene**
**Against Oneida Defendants Hallihan and Ellis**

108.    Plaintiff realleges the above paragraphs.

109.    Defendant Hallihan searched Plaintiff by frisking him and reaching into his pockets. Plaintiff did not consent, and Hallihan did not have reasonable suspicion to believe that Plaintiff was armed and dangerous.

110.    Defendant Ellis knew there was not reasonable suspicion that the Plaintiff was armed and dangerous but allowed him to be searched anyway.

111.    Defendant Ellis failed to intervene in a constitutional violation that he knew was happening before him and could have stopped.

112.    Defendants Hallihan and Ellis thus violated Plaintiff's Fourth Amendment rights to be free from unreasonable seizures and searches.

113.    The aforementioned actions of Defendants Hallihan and Ellis were the direct and proximate cause of the constitutional violations set forth above and of Plaintiff's injuries and damages set forth above.

WHEREFORE, under 42 U.S.C. § 1983, Plaintiff demands actual or compensatory damages against Defendants Hallihan and Ellis; and because they acted maliciously, wantonly, or oppressively, punitive damages; the costs of this action; attorneys' fees; and such other and further relief that the Court deems just and equitable.

## COUNT II:
### February 13, 2025
### 42 U.S.C. § 1983 Claim for Unreasonably Extending Seizure
### Against Oneida Defendants Hallihan and Ellis

114.    Plaintiff realleges the above paragraphs.

115.    Defendants Hallihan and Ellis unlawfully extended the seizure of Plaintiff by continuing to detain him after reasonable suspicion that he had driven while intoxicated had dissipated (if it ever existed at all).

116.    Defendants Hallihan and Ellis thus violated Plaintiff's Fourth Amendment rights to be free from unreasonable seizure.

WHEREFORE, under 42 U.S.C. § 1983, Plaintiff demands actual or compensatory damages against Defendants Hallihan and Ellis; and because they acted maliciously,

wantonly, or oppressively, punitive damages; the costs of this action; attorneys' fees; and such other and further relief that the Court deems just and equitable.

**COUNT III:**
**February 20, 2025**
**42 U.S.C. § 1983 Claim for Unreasonable Seizure**
**Against Oneida Defendants Coniglio, Williams, Rudolph,**
**Berg, and Drummond**

117.   Plaintiff realleges the above paragraphs.

118.   The intentional actions of Defendants Coniglio, Williams, Rudolph, Berg, and Drummond in seizing Plaintiff, without reasonable suspicion or probable cause, and/or intentionally failing to prevent said abuse, despite having the opportunity and duty to do so, violated his Fourth Amendment right to be free from unreasonable search and seizure, and thus violated 42 U.S.C. § 1983.

119.   Defendants Coniglio, Williams, Rudolph, Berg, and Drummond acted recklessly and/or with callous indifference to the federally protected rights of Plaintiff.

120.   As a direct and proximate result of Defendants Coniglio, Williams, Rudolph, Berg, and Drummond's unlawful actions, Plaintiff has suffered and will continue to suffer damages.

WHEREFORE, under 42 U.S.C. § 1983, Plaintiff demands actual or compensatory damages against Defendants Coniglio, Williams, Rudolph, Berg, and Drummond; and because they acted maliciously, wantonly, or oppressively, punitive damages; the costs of this action; attorneys' fees; and such other and further relief that the Court deems just and equitable.

13

## COUNT IV:
### February 20, 2025
### 42 U.S.C. § 1983 Claim for Illegal Search / Failure to Intervene
### Against Oneida Defendants Coniglio, Williams,
### Rudolph, Berg, and Drummond

121.    Plaintiff realleges the above paragraphs.

122.    The intentional actions of Defendants Coniglio, Williams, Rudolph, Berg, and Drummond in searching the pockets of Plaintiff and seizing his wallet and frisking him, without a warrant or a lawful exception to the warrant requirement, and/or intentionally failing to prevent said abuse, despite having the opportunity and duty to do so, violated his Fourth Amendment right to be free from unreasonable search and seizure, and thus violated 42 U.S.C. § 1983.

123.    Defendants Coniglio, Williams, Rudolph, Berg, and Drummond acted recklessly and/or with callous indifference to the federally protected rights of Plaintiff.

124.    As a direct and proximate result of Defendants Coniglio, Williams, Rudolph, Berg, and Drummond's unlawful actions, Plaintiff has suffered and will continue to suffer damages.

WHEREFORE, under 42 U.S.C. § 1983, Plaintiff demands actual or compensatory damages against Defendants Coniglio, Williams, Rudolph, Berg, and Drummond; and because they acted maliciously, wantonly, or oppressively, punitive damages; the costs of this action; attorneys' fees; and such other and further relief that the Court deems just and equitable.

**COUNT V:**
**February 20, 2025**
**42 U.S.C. § 1983 Claim for Unlawful Arrest**
**Against Oneida Defendants Coniglio, Williams, Rudolph,**
**Berg, and Drummond and Rhinelander Defendants Helke and Larsen**

125.     Plaintiff realleges the above paragraphs.

126.     Defendants Coniglio, Williams, Rudolph, Berg, Drummond, Helke, and Larsen arrested Plaintiff by handcuffing him and searching, and/or intentionally failed to prevent said abuse, despite having the opportunity and duty to do so, violated his Fourth Amendment right to be free from unreasonable search and seizure, and thus violated 42 U.S.C. § 1983.

127.     Defendants Coniglio, Williams, Rudolph, Berg, Drummond, Helke, and Larsen thus violated Plaintiff's Fourth Amendment rights to be free from unreasonable seizures and searches.

128.     The aforementioned actions of Defendants Coniglio, Williams, Rudolph, Berg, Drummond, Helke, and Larsen were the direct and proximate cause of the constitutional violations set forth above and of Plaintiff's injuries and damages set forth above.

WHEREFORE, under 42 U.S.C. § 1983, Plaintiff demands actual or compensatory damages against Defendants Coniglio, Williams, Rudolph, Berg, Drummond, Helke, and Larsen; and because they acted maliciously, wantonly, or oppressively, punitive damages; the costs of this action; attorneys' fees; and such other and further relief that the Court deems just and equitable.

**COUNT VI:**
**February 20, 2025**
**42 U.S.C. § 1983 Claim for Illegal Seizure for Extending Stop**
**Against Oneida Defendants Coniglio, Williams, Rudolph, Berg, and Drummond**
**and Rhinelander Defendants Helke and Larsen**

129.    Plaintiff realleges the above paragraphs.

130.    The intentional actions of Defendants Coniglio, Williams, Rudolph, Berg, Drummond, Helke, and Larsen in continuing to detain Plaintiff, without reasonable suspicion after they became aware he was not Jordan Larson, and/or intentionally failing to prevent said abuse, despite having the opportunity and duty to do so, violated his Fourth Amendment right to be free from unreasonable search and seizure, and thus violated 42 U.S.C. § 1983.

131.    Defendants Coniglio, Williams, Rudolph, Berg, Drummond, Helke, and Larsen acted recklessly and/or with callous indifference to the federally protected rights of Plaintiff.

132.    As a direct and proximate result of Defendants Coniglio, Williams, Rudolph, Berg, Drummond, Helke, and Larsen's unlawful actions, Plaintiff has suffered and will continue to suffer damages.

WHEREFORE, under 42 U.S.C. § 1983, Plaintiff demands actual or compensatory damages against Defendants Coniglio, Williams, Rudolph, Berg, Drummond, Helke, and Larsen; and because they acted maliciously, wantonly, or oppressively, punitive damages; the costs of this action; attorneys' fees; and such other and further relief that the Court deems just and equitable.

## COUNT VII:
### Indemnification Claim Against Oneida County

133.   Plaintiff realleges the above paragraphs.

134.   Wisconsin law, WIS. STAT. § 895.46, requires public entities to pay any tort judgment for damages for which employees are liable, for acts within the scope of their employment.

135.   At all times relevant to this action, Defendants Ellis, Hallihan, Coniglio, Williams, Rudolph, Berg, and Drummond engaged in the conduct complained of while they were on duty and in the course and scope of their employment with Oneida County.

WHEREFORE, Plaintiff asks this Court to find that Oneida County is liable to defend this action against Defendants Ellis, Hallihan, Coniglio, Williams, Rudolph, Berg, and Drummond and to satisfy any judgment entered against them, by virtue of WIS. STAT. § 895.46.

## COUNT VIII:
### Indemnification Claim Against City of Rhinelander

136.   Plaintiff realleges the above paragraphs.

137.   Wisconsin law, WIS. STAT. § 895.46, requires public entities to pay any tort judgment for damages for which employees are liable, for acts within the scope of their employment.

138.   At all times relevant to this action, Defendants Helke and Larsen engaged in the conduct complained of while they were on duty and in the course and scope of their employment with the City of Rhinelander.

17

WHEREFORE, Plaintiff asks this Court to find that the City of Rhinelander is liable to defend this action against Defendants Helke and Larsen and to satisfy any judgment entered against them, by virtue of WIS. STAT. § 895.46.

### JURY DEMAND

Plaintiff hereby demands a trial by jury, pursuant to FED. R. CIV. P. 38(b), on all issues so triable.

Respectfully submitted,

Dated: 23 September 2025,

/s/ William E. Grau
John H. Bradley
  Wisconsin Bar No. 1053124
Jacob M. Stroup
  Wisconsin Bar No. 1089159
William E. Grau
  Wisconsin Bar No. 1117724
STRANG BRADLEY, LLC
613 Williamson Street, Suite 204
Madison, Wisconsin 53703
(608) 535-1550
John@StrangBradley.com
Jacob@StrangBradley.com
William@StrangBradley.com